Calvin L. MARTIN and Irene
Martin, Plaintiffs,

v.

WORTH CHEMICAL CORPORATION
and P.B. & S. Chemical Company,
Defendants.

No. C–C–84–0490–P.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Oct. 18, 1985.

J. Kevin Holmes, Steinberg, Levkoff, Spitz & Goldberg, Charleston, S.C., John G. Plumides, Plumides, Plumides & Shuster, Charlotte, N.C., for plaintiffs.

Rodney Dean, Golding, Crews, Meekins, Gordon & Gray, Thomas A. Lockhart, Cansler & Lockhart, Charlotte, N.C., for defendants.

## ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER was heard before the undersigned on September 9, 1985 at Charlotte, North Carolina on the motion of Defendant P.B. & S. Chemical Company ("P.B. & S.") for summary judgment as to all of the Plaintiffs' claims. The Defendant was represented by Rodney Dean and Thomas A. Lockhart, Attorneys at Law. The Plaintiffs were represented by J. Kevin Holmes and John G. Plumides, Attorneys at Law.

The Plaintiffs instituted this action against P.B. & S. and Worth Chemical Corporation for personal injuries sustained by the Plaintiff Calvin Martin as a result of the Defendant's alleged negligence and P.B. & S.'s alleged breach of an implied warranty of merchantability, and for the Plaintiff Irene Martin's loss of consortium allegedly resulting from the physical injuries sustained by her husband, Calvin Martin. Since Mrs. Martin's claim is wholly derivative and may be maintained only if her husband's personal injury action survives this summary judgment motion, *see Southerland v. Kapp,* 59 N.C.App. 94, 95, 295 S.E.2d 602, 603 (1982), the Court will refer hereafter only to the Plaintiff Calvin Martin and his claims.

On August 19, 1981, P.B. & S., a Kentucky corporation in the business of distributing commodity chemicals, shipped a carbon steel cylinder containing chlorine to Worth Chemical Corporation in Greens-

boro, North Carolina. Worth in turn shipped the cylinder to its plant in Charlotte, North Carolina. On the morning of September 14, 1981 a leak was discovered in the cylinder. The Plaintiff, an independent trucker, arrived at Worth's Charlotte plant at about 8:00 a.m. on September 14, 1981 to deliver a load of goods. While waiting for his truck to be unloaded, the Plaintiff did some paperwork and then fell asleep in the cab of his truck. He was awakened by nausea and a burning in his eyes and nose that resulted from exposure to the chlorine gas that had leaked out of the cylinder supplied by P.B. & S.

The Plaintiff alleges that P.B. & S. was negligent in the manufacture and inspection of the cylinder that it shipped to Worth Chemical Corporation; in its failure to give Worth adequate warnings and instructions in the event of a leak; in its failure to hire, assign and train an adequate number of personnel and to provide proper equipment to guard against exposure to the chemical; and in its handling of the leaking cylinder.

Fed.R.Civ.P. 56 states that the Court may grant summary judgment if there is not a genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The evidence presented to the Court, including any legitimate inference therefrom, is to be viewed in the light most favorable to the opposing party. *Tyndall v. United States*, 295 F.Supp. 448, 451 (E.D.N.C.1969). Summary judgment should be allowed only where it is "quite clear what the truth is" *Sartor v. Arkansas Natural Gas Co.*, 321 U.S. 620, 627, 64 S.Ct. 724, 728, 88 L.Ed. 967 (1944) and where "inquiry into the facts is not desirable to clarify the application of the law." *Pierce v. Ford Motor Co.*, 190 F.2d 910, 915 (4th Cir.), *cert. denied*, 342 U.S. 887, 72 S.Ct. 178, 96 L.Ed. 666 (1951).

The Court notes that summary judgment is rarely a proper method by which federal courts should dispose of negligence cases, since material facts are usually in dispute in such actions. *Tyndall v. United States*, 295 F.Supp. 448, 451 (E.D.N.C.1969). Even if there is no dispute as to the facts, there

is almost always a dispute for the jury to decide as to whether the conduct in question meets the reasonable man standard. *See id.; Pierce v. Ford Motor Co., supra,* 190 F.2d at 915; 10A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure: Civil 2d* § 2729 (1983).

■ Applying these standards and observations to the evidence before the Court, the Court is of the opinion that summary judgment should be denied as to the Plaintiff's first three allegations of negligence as noted above but should be granted as to the Plaintiff's allegation that P.B. & S. was negligent in handling the leaking cylinder. P.B. & S. had no physical contact with the cylinder after the leak actually developed; therefore, there is no issue of fact regarding any possible negligence by P.B. & S. in "handling" it since it did not "handle" the cylinder while it was leaking at all.

■ With regard to the Plaintiff's other claims of negligence, summary judgment would be inappropriate. Further inquiry into the facts and into the standards of care and procedure in the chemical industry would be helpful in determining the legal consequences of P.B. & S.'s actions or omissions to act. For example, inquiry is needed into the sufficiency of P.B. & S.'s personnel and the equipment available to guard against or deal with hazardous chemicals and accidents.

Likewise, the affidavit of the Plaintiff's expert raises a question as to whether the steps taken by P.B. & S. to instruct, warn or assist Worth Chemical in the event of a chemical leak such as this one were adequate in light of the practices of other chemical companies. The depositions before the Court also evidence a dispute as to whether it was a P.B. & S. employee or someone at Jones Chemical Company, another chlorine distributor located in Charlotte, who instructed Worth Chemical to place the leaking cylinder in a liquid caustic soda solution. As noted by the Plaintiff's expert, such an instruction was in direct conflict with the recommendations of the Chlorine Institute in its 1980 Emergency Response Guidebook.

The Plaintiff's expert states that he would be willing to testify that the cylinder could have left P.B. & S.'s plant with a certain defect or condition that would have developed into or resulted in a leak during the time interval between its shipment from P.B. & S. to Worth Chemical Corporation and the actual discovery of the leak. P.B. & S. claims that this expert's opinion does not give rise to a triable issue concerning whether P.B. & S. was negligent in its manufacture or inspection of the cylinder because it is only conjecture as to what "may" have happened. The Court does not agree; as the Fourth Circuit has noted,

> [e]ven in cases where the judge is of the opinion that he will have to direct a verdict for one party or the other on the issues that have been raised, he should ordinarily hear the evidence and direct the verdict rather than attempt to try the case in advance on a motion for summary judgment. . . .

*Pierce v. Ford Motor Co., supra,* 190 F.2d at 915. Further inquiry into the facts, including P.B. & S.'s actual inspection procedure with respect to that cylinder, would be helpful in determining what caused the leak and whether the condition giving rise to the leak existed at the time the cylinder left P.B. & S.

In addition to his negligence claims, the Plaintiff alleges that P.B. & S. breached an implied warranty of merchantability that the chlorine gas was adequately contained and packaged and would pass without objection in the trade. The possibility posited by the Plaintiff's expert that the condition giving rise to the leak in the cylinder could have existed at the time the cylinder of chlorine left P.B. & S. defeats P.B. & S.'s argument that there is no issue of material fact as to this claim.

P.B. & S. also asserts, however, that the Plaintiff cannot maintain a claim for breach of implied warranty of merchantability because there is no privity of contract between the Plaintiff and P.B. & S. and none of the statutory exceptions to the privity requirement enumerated in N.C.Gen.Stat. § 99B–2(b) is applicable. The Plaintiff's

ability to maintain this claim depends on whether he falls within the privity exception for a "guest of the buyer." As P.B. & S. has noted, the word "guest" is not defined in the 1979 North Carolina Product Liability Act, nor has it been judicially construed by any North Carolina court in a reported decision to date.

P.B. & S.'s briefing on whether an independent trucker making a delivery on the premises of the buyer of allegedly defective goods can be considered a "guest of the buyer" has not been particularly helpful or persuasive; the Plaintiff's briefing on this issue is non-existent. Before ruling on the summary judgment motion as to the Plaintiff's breach of implied warranty claim, the Court will allow the parties to present legal authority, by way of analogy to other areas of North Carolina law dealing in the "guests" or by comparison to similar statutes in other states, for their positions concerning whether the Plaintiff qualifies as a guest of Worth Chemical.

Finally, the Court has been advised by the Plaintiffs' counsel that the Plaintiffs waive their claims for punitive damages. Therefore, P.B. & S.'s motion for summary judgment as to the claims for punitive damages should be granted.

The Defendant is not entitled to summary judgment as to the Plaintiff Irene Martin's claim for loss of consortium, since the Court is not dismissing all the claims of the Plaintiff Calvin Martin.

IT IS, THEREFORE, ORDERED that

(1) The Defendant P.B. & S.'s motion for summary judgment is GRANTED IN PART and DENIED IN PART; and

(2) The parties are directed to file supplemental legal memoranda supporting their positions on whether the Plaintiff qualifies as a "guest of the buyer" under N.C.Gen.Stat. § 99B–2(b) on or before October 28, 1985.